UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
U.S. DISTRICT COURT
DISTRICT OF VERMONT
       FILED

2025 JUN 23 AM 11: 30

         CLERK
BY  [signature]
     DEPUTY CLERK
```

| | |
|---|---|
| LYNN PARISEAU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:23-cv-00043 |
| ) | |
| KILLINGTON/PICO SKI ) | |
| RESORT PARTNERS, LLC, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**
(Doc. 86)

Plaintiff Lynn Pariseau brings this action against Defendant Killington/Pico Ski Resort Partners, LLC, seeking recovery for Defendant's alleged negligence which caused her to be injured by a lift chair. Pursuant to the court's decision granting Plaintiff's motion to compel expert evidence, (Doc. 63), Plaintiff filed a motion for attorney's fees on November 12, 2024. (Doc. 86.) Defendant filed its opposition on November 19, 2024, (Doc. 88), and Plaintiff filed her reply on December 3, 2024. (Doc. 89.)

Plaintiff is represented by Justin A. Brown, Esq. Defendant is represented by Andrew H. Maass, Esq., and Matthew D. Preedom, Esq.

### I.     Factual and Procedural Background.

Defendant retained and disclosed Thomas G. Sanford as an accident-reconstruction expert. Mr. Sanford visited the site of the alleged incident and took photographs, videos, measurements, and notes in order to formulate his opinions. Plaintiff asserts that during this visit, Mr. Sanford plotted where he determined Plaintiff and her two friends were located at the time of the incident on a map created by

Plaintiff's expert, William Howerton. Some of Mr. Sanford's work was directed to producing potential trial exhibits. Defendant concedes "[t]he videos were captured for the purpose of presenting his opinions." (Doc. 88 at 3.)

On June 6, 2024, prior to Mr. Sanford's deposition, Plaintiff requested via email that Defendant "produce any documents, photos, charts, etc. in connection with Mr. Sanford's field inspection at Killington as well as his plotted locations of [Plaintiff and her two friends] in the load zone as referenced in his report." (Doc. 63-4 at 2.) Defendant replied confirming the date of Mr. Sanford's deposition but did not address Plaintiff's document request.

On June 27, 2024, Plaintiff repeated her request. After email exchanges between the parties, Defendant responded on July 8, 2024, stating: "[W]e are **not** withholding any document [Mr.] Sanford considered or relied on. . . . We **are** withholding documents that are protected from discovery by the rules. Those documents are draft reports, draft exhibits, and communications with this office[.]" (Doc. 63-6 at 9) (emphasis in original). On July 9, 2024, Plaintiff responded requesting Defendant "directly answer whether [it was] withholding the plotted locations of [Plaintiff and her two friends] as well as any photos/videos taken by [Mr. Sanford], notes created by him, or any calculations[.]" *Id.* at 6. Defendant did not directly respond to this request and maintained its position that it would make no further disclosures.

Plaintiff deposed Mr. Sanford on July 11, 2024. On July 12, 2024, after Mr. Sanford's deposition, Plaintiff reiterated her request, stating Defendant's claim that Mr. Sanford had not relied on the requested materials was "contrary to Mr. Sanford's testimony at his deposition[.]" *Id.* at 4. Defendant responded on July 16, 2024, and provided Plaintiff with a copy of Mr. Sanford's measurements and plotted locations diagramed on Mr. Howerton's map and Mr. Sanford's handwritten notes. Defendant, however, refused to produce the videos Mr. Sanford took, contending they were protected work product because they were "draft exhibits." *Id.* at 2. Defendant did not produce a privilege log.

2

On July 25, 2024, Plaintiff requested Defendant provide "any authority [it was] relying upon for [its] assertions that 'draft exhibits' from an expert's file in existence at the time of the expert's deposition are properly withheld under the rules," (Doc. 86 at 4) (citation and internal quotation marks omitted), and reminded Defendant that the test to determine whether evidence was "considered" is an objective one. *Id.* (internal quotation marks omitted). Defendant continued to refuse to produce the "draft exhibits."

On August 26, 2024, Plaintiff filed a motion to compel expert evidence (Doc. 63), seeking documents Defendant improperly withheld. Although Defendant had provided Plaintiff with the measurements taken by Mr. Sanford during his site visit, "[Defendant] refused to allow [Plaintiff] to conclude Mr. Sanford's deposition[,]" which Plaintiff had kept open to "question[] him about the[] newly disclosed expert materials." (Doc. 86 at 4.)

On October 29, 2024, the court held a hearing (the "October 29 hearing") wherein it granted Plaintiff's motion to compel because Defendant failed to disclose several videos and a diagram drafted by its expert witness that are not privileged and must be disclosed. (Doc. 80.) "[Defendant's] counsel admitted during the hearing that the failure to provide [a] privilege log was an 'oversight.'" (Doc. 86 at 3.) Defendant's counsel also acknowledged that he had found no case law "dealing with a draft photo or a video[.]" (Doc. 84 at 33.) The court noted that if the rule allowed an expert witness and counsel to withhold all "draft" photographs, maps, and videos, "the likelihood of it being misused would be enormous." *Id.* at 52. The court also ordered that Mr. Sanford's deposition be reopened for three hours with Defendant bearing the cost thereof.

During the October 29 hearing, the court observed:

> The rules are pretty clear that if a motion to compel is granted, there should be an award of attorney's fees. . . . [T]hat is something that the rules have been amended that the [c]ourt shall impose attorney's fees either granting or denying a motion to compel, so whoever prevails on that should get their attorney's fees, and, of course, the incentive is to dampen the enthusiasm for having discovery disputes.

*Id.* at 4-5.

3

As the prevailing party, Plaintiff filed a motion for attorney's fees, seeking $5,244 for time spent "(1) communicating with [Defendant's] counsel as part of the meet and confer process, (2) drafting and revising the Motion to Compel, and (3) drafting and revising the Reply."[1] (Doc. 86 at 5) (citation omitted).

Plaintiff does not seek to recover fees for:

(1) . . . communications with [Defendant]'s counsel concerning the documents requested from Mr. Sanford in the lead up to his deposition; (2) the time spent on the telephonic meet and confer regarding the Motion to Compel; (3) any paralegal time in connection with editing the Motion to Compel and Reply and compiling the exhibits; and (4) undersigned counsel's time revising and editing the Motion to Compel, Reply, and the supporting affidavits ([Plaintiff] is only seeking Attorney Matthew Greer's time drafting and editing the briefs). Finally, [Plaintiff] is not seeking fees for the drafting of th[e instant m]otion and the supporting affidavit.

*Id.* at 5-6 (internal citation omitted).

## II.   Conclusions of Law and Analysis.

### A.   Federal Rule of Civil Procedure 37(a)(5).

Fed. R. Civ. P. 37(a)(5) provides that if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." "Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled." *Jackson v. Nassau Cnty.*, 602 F. Supp. 3d 352, 355 (E.D.N.Y. 2022) (internal quotation marks omitted).

"The burden of proof is on the disobedient party to show 'that his [or her] failure is justified or that special circumstances make an award of expenses unjust.'" *Jankowski v. Centurion of Vt.*, 2024 WL 48855, at *1 (D. Vt. Jan. 4, 2024) (quoting *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014)); *see also* Fed.

---

[1] Plaintiff asserts that Defendant's opposition to the motion to compel contained "hodgepodge arguments . . . that attached almost 800 pages of exhibits." (Doc. 86 at 1.)

4

R. Civ. P. 37(a)(5)(A)(ii), (iii). "Because the text of the rule requires only that the district court's orders be 'just,' . . . the district court has 'wide discretion in imposing sanctions under Rule 37[.]'" *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (citing *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007)).

### B.  The Work Product Doctrine.

Fed. R. Civ. P. 26(b)(4) "extend[s] work-product protection—set forth in Rule 26(b)(3)—to certain expert documents." *Hernandez v. The Off. of the Comm'r of Baseball*, 335 F.R.D. 45, 47 (S.D.N.Y. 2020). In relevant part, the rule states:

> B.  *Trial-Preparation Protection for Draft Reports or Disclosures.* Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.
>
> C.  *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.* Rules 26(b)(3)(A) and (B) protect communications *between* the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: . . .
>
>> (ii)  identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed[.]

Fed. R. Civ. P. 26(b)(4) (first and second emphases in original).

As a result, "[a]n expert's notes to him[ or her]self do not qualify for protection under Fed. R. Civ. P. 26(b)(4)." *Hernandez*, 335 F.R.D. at 49; *see also Dongguk Univ. v. Yale Univ.*, 2011 WL 1935865, at *1 (D. Conn. May 19, 2011) ("[A]s a general matter, an expert's notes are not protected by 26(b)(4)(B) or (C), as they are neither drafts of an expert report nor communications between the party's attorney and the expert witness."); Rule 26(b)(4) Advisory Comm. Note, 2010 Amendments ("Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert *or the development, foundation, or basis* of those opinions. For example, the expert's testing . . . and notes of

5

any such testing[] would not be exempted from discovery by this rule.") (emphasis supplied).

### C.    Whether Plaintiff is Entitled to Attorney's Fees.

Defendant argues that, in light of the lack of precedent governing the parties' discovery dispute, its failure to disclose the requested materials was substantially justified and Plaintiff therefore is not entitled to an award of attorney's fees. Substantial justification does not mean "'justified to a high degree,' but rather has been said to be satisfied if there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action[.]" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citations, brackets, and quotation marks omitted).

Defendant further contends that "the discovery of videos captured by an expert for the purpose of presenting his [or her] opinion, but which were ultimately not used for that purpose[,]" (Doc. 88 at 3), is not clearly authorized and there is an absence of case law governing whether "draft" exhibits and photographs must be disclosed. *See id.* at 2. It is, however, clear that Fed. R. Civ. P. 26(a)(2)(B)(ii) requires disclosure of "the facts or data considered by the witness in forming" his or her expert opinion. This evidence is not shielded from disclosure under Fed. R. Civ. P. 26(b)(4) (emphasis supplied) which exempts "drafts of any *report* or *disclosure* required under Rule 26(a)(2)" which does not include videos and photographs and which are not communications "required to provide a report under Rule 26(a)(2)(B)[.]" For that reason, courts routinely compel the production of this type of material. *See, e.g.*, *Inselberg Van Etten v. Wells Fargo Bank, N.A.*, 2022 WL 20508944, at *4 (D.N.J. Sept. 1, 2022) (finding expert's "review of the facts and/or data provided by [] counsel was sufficient for [the expert] to have 'considered' them in forming [his] opinion, regardless of whether [he] actually relied on such facts and data in formulating [his] opinion"); *Whalen v. CSX Transp., Inc.*, 2016 WL 5660381, at *7 (S.D.N.Y. Sept. 29, 2016) (holding defendant "must produce copies of all photographs and videos" created by the expert witness and in his possession "regardless of whether he relied on them").

At the October 29 hearing, the court observed:

> [T]hink about . . . what a perversion of the rule could happen if your view of it is the one that holds. So an expert could go do innumerable amount of site visiting, measuring, . . . photographing, and all the expert would have to say is, "I didn't rely on that in my report. I put it all aside. I was there. Yes, I did these things, but I put it all aside, and so you're not entitled to it." . . .
>
> It would be like somebody performing experiments and saying, "Well, I don't have to tell them about the [thirty] I performed where it didn't produce the desired result because I certainly didn't rely on them in coming up with the [thirty-first] and the [thirty-second] that proved my . . . expert opinion." I mean, it would be so subject to perversion if that was the way the rule read.

(Doc. 84 at 32.)

Defendant nonetheless argues that it provided Plaintiff sufficient information about the documents it withheld when it stated it was "withholding documents that are protected from discovery by the rules. Those documents are draft reports, draft exhibits, and communications with his office that do not fall within the specific exceptions of Rule 26(b)(4)(C)." (Doc. 88 at 4) (internal quotation marks omitted). Because Defendant did not provide Plaintiff with a privilege log, Plaintiff had no means of testing the accuracy of this statement. Although Defendant claims the failure to provide a privilege log was bilateral, a privilege log was unambiguously required. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii) (requiring a privilege log to "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim[]"). Defendant's email correspondence listing the general categories of documents it withheld did not comply with Rule 26's requirements and, in particular, did not disclose Defendant was withholding photographs and videos on the grounds that they were "privileged."

The lack of authority in support of Defendant's position coupled with prior case law ruling this type of evidence discoverable renders Defendant's position not

7

substantially justified in withholding the evidence.[2] Because Defendant failed to comply with Rule 26, its position was not substantially justified, and it did not provide a privilege log, the court agrees that an award of attorney's fees is warranted. *See* Fed. R. Civ. P. 37(a)(5); *Wright v. Rochester Sportfishing, Inc.*, 2025 WL 1024002, at *7 (W.D.N.Y. Apr. 7, 2025) (awarding attorney's fees under Rule 37(a)(5) after determining Defendant's violation of federal and local rules governing discovery was not substantially justified). In so ruling, the court is mindful that it has previously ordered a monetary sanction by requiring Defendant to bear the cost of Mr. Sanford's resumed deposition.[3]

### D. Whether the Amount Requested by Plaintiff is Presumptively Reasonable.

Defendant argues that Plaintiff's requested attorney's fees are excessive for the work required, because if "the motion to compel . . . had such an obvious outcome that sanctions are appropriate[,]" (Doc. 88 at 5), it "should have taken Plaintiff no more than [ten] hours to litigate." *Id.* at 6.

> Courts award attorney's fees according to the "presumptively reasonable fee" (or "lodestar") method, calculated as the product of the reasonable number of hours worked and a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany*

---

[2] Defendant cites two non-binding cases to argue that substantial justification exists "where there is no controlling, on-point caselaw contradicting the loser's position." (Doc. 88 at 2.) In *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846 (11th Cir. 1997), the court found that plaintiffs were "substantially justified in . . . relying on out-of-circuit district court caselaw, where there was no in-circuit caselaw[]" regarding the production of certain tax records. *Id.* at 853. In *Peterson v. Hantman*, 227 F.R.D. 13 (D.D.C. 2005), the court noted that "[i]f there is an absence of controlling authority, and the issue presented is one not free from doubt and could engender a responsible difference of opinion among conscientious, diligent but reasonable advocates, then the opposing positions taken by them are substantially justified." *Id.* at 18 (internal citations and quotation marks omitted) (quoting *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 200, 205 (D.D.C. 1998)). These cases are distinguishable as there is in-circuit case law and as the applicable rules do not exempt photographs or videos merely because they may later be used as trial exhibits. Such an exception would swallow the rule.

[3] Although the court has already imposed a monetary sanction by requiring Defendant to bear the cost of Mr. Sanford's resumed deposition, the former sanction is separate and apart from Fed. R. Civ. P. 37(a)(5)'s command that a court "require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

8

> *Cnty Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008), *as amended* (Apr. 10, 2008). "[The Second Circuit] has instructed that determination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,' an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005)).
>
> In *Arbor Hill*, [the Second Circuit] emphasized that "the reasonable hourly rate is the rate a paying client would be willing to pay . . . bearing in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." 522 F.3d at 190. "In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors."[4] *Id.* The Supreme Court has affirmed that "the most critical factor is the degree of success obtained." *Hensley* [*v. Eckerhart*], 461 U.S. [424,] 436 [(1983)].

*Agudath Isr. of Am. v. Hochul*, 2023 WL 2637344, at *1-2 (2d Cir. Mar. 27, 2023) (alterations adopted).

Two attorneys worked on Plaintiff's motion to compel for a total of 22.8 hours. Attorney Brown's hourly rate is $375 and Attorney Greer's is $310. The discovery rules governing the dispute are well settled, and the fifteen-page motion was not particularly complex and thus was a routine motion to compel. The questions at issue were not novel, although Defendant's argument in favor of withholding the documents was. Plaintiff

---

[4] In *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989), the Fifth Circuit identified twelve factors to consider for fee calculations:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 186 n.3 (2d Cir. 2008).

9

achieved a successful outcome in filing the motion and argued the motion with skill and expertise.

"This court has found hourly rates in the range of $200 to $300 per hour to be reasonable." *Jankowski*, 2024 WL 48855, at *2 (quoting *Jennifer W. v. Comm'r of Soc. Sec.*, 2020 WL 13608038, at *4 (D. Vt. Oct. 8, 2020)). Plaintiff seeks reimbursement at a reduced hourly rate of $285 for Mr. Brown and $225 for Mr. Greer. In light of the prevailing market rate in Vermont and the nature and difficulty of the motion to compel, the proposed hourly rates are objectively reasonable. *See Ha v. Conn*, 2023 WL 5287214, at *2 (D. Vt. Aug. 17, 2023) (finding a rate of $225 per hour was appropriate in a case involving tort claims that were not novel).

Once a court has determined the applicable reasonable hourly rate, it must "multiply[] that rate by the number of hours reasonably expended to determine the presumptively reasonable fee." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (footnote omitted). Rule 37 permits parties to recover attorney's fees reasonably incurred "in making the motion to compel." *Jankowski*, 2024 WL 48855, at *2 (citing Fed. R. Civ. P. 37(a)(5)(A) (internal quotation marks and brackets omitted).

Plaintiff seeks reimbursement for the following expenses:

| Hours | Rate | Amount | Narrative |
|---|---|---|---|
| 0.5 | 285.00 | $142.50 | Correspond Atty Preedom re T. Sanford expert materials and any withholding of the same |
| 0.2 | 285.00 | $57.00 | Correspond Atty Preedom re T. Sanford expert materials and seeking confirmation of materials not being produced |
| 0.4 | 285.00 | $114.00 | Correspond Atty Preedom re T. Sanford expert materials not produced based on testimony of T. Sanford during deposition |
| 0.8 | 285.00 | $228.00 | Correspond Atty Preedom re motion to compel T. Sanford expert materials |
| 3.5 | 225.00 | $787.50 | Draft, edit motion to compel expert material including research on legal standards, review of deposition transcripts and expert reports |
| 2.4 | 225.00 | $540.00 | Draft, edit motion to compel expert material |
| 1.9 | 225.00 | $427.50 | Draft, edit motion to compel expert material |
| 1.2 | 225.00 | $270.00 | Review opposition to motion to compel; review cited authorities by Killington to draft reply brief |
| 4.1 | 225.00 | $922.50 | Draft reply in support of motion to compel; review materials and authorities cited by Killington in opposition including copious exhibits |
| 5.3 | 225.00 | $1,192.50 | Draft, edit reply in support of motion to compel; research Rule 26 case law |
| 2.5 | 225.00 | $562.50 | Draft, edit reply in support of motion to compel expert material |
| 22.8 | | $5,244.00 | |

(Doc. 86-3 at 1.) Defendant's opposition to Plaintiff's motion to compel was fifteen pages but was accompanied by nine exhibits. Plaintiff's counsel spent 11.9 hours researching, drafting, and editing their reply. *See id.* Even with its 800 pages of exhibits,

10

most of which Plaintiff had presumably previously reviewed in discovery,[5] in light of the sanction the court has already imposed, 11.9 hours is excessive, and the court reduces the total hours to 8.0 for each attorney.

Multiplying 16 hours of objectively reasonable time by a blended rate[6] of $225 results in a reasonable attorney's fees award of $3,600. *See Jankowski*, 2024 WL 48855, at *4 (granting plaintiff's motion for attorney's fees for fourteen and a half hours of work on two motions to compel).

## CONCLUSION

For the reasons stated above, Plaintiff's motion for attorney's fees is GRANTED IN PART and DENIED IN PART. (Doc. 86.) Defendant shall pay Plaintiff's attorney's fees in the amount of $3,600 within fourteen (14) days of the date of this Order.
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 23rd day of June, 2025.

Christina Reiss, Chief Judge
United States District Court

---

[5] Three exhibits were "their own discovery responses," and a fourth exhibit was "a 691-page production from Mr. Sanford's file that Plaintiff presumably reviewed before Mr. Sanford's deposition." (Doc. 88 at 6.)

[6] To ensure an award of attorney's fees is reasonable, "the court 'crosschecks' the hours expended in conjunction with a 'blended rate' of partner and associate rates." *Semon v. Swenson*, 2013 WL 1182224, at *5 (D. Vt. Mar. 21, 2013) (citing *Davis v. Cent. Vt. Pub. Serv. Corp.*, 2012 WL 4471226, at *11 (D. Vt. Sept. 27, 2012)); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3rd Cir. 2005) ("Failure to apply a blended rate . . . is inconsistent with the exercise of sound discretion and requires vacating and remanding for further consideration.").